UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Jose L. Linares |
| | : | |
| v. | : | Criminal No. 14-458-JLL |
| | : | |
| ANTHONY BLUMBERG and | : | |
| MICHAEL CRAIG MARSHALL | : | |
| | : | |

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' JOINT MOTION TO COMPEL
THE GOVERNMENT TO PRODUCE BRADY MATERIAL IN THE SEC'S FILES

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................ii

**TABLE OF AUTHORITIES** ........................................................iii

**PRELIMINARY STATEMENT** ................................................. 1

**BACKGROUND** ............................................................................ 3

    I.    The DOJ's Investigation Into the Taking of TP at ConvergEx Has Been and Remains Separate From the SEC's Investigation Into the Same Conduct................................................................................... 3

    II.   The DOJ's Production of Discovery in This Matter Has Been Voluminous, and Has or Will Include All Fact Materials Gathered by the SEC in That Agency's ConvergEx TP Investigation................................................... 6

**ARGUMENT** .................................................................................... 9

    I.    The SEC Is Not Acting on the DOJ's Behalf or Under Its Control........ 11

    II.   The SEC Did Not Conduct a Joint Investigation With the DOJ, But Rather Carried Out a Separate Investigation, Using Its Own Resources, Into the Same Facts ......................................................................... 12

    III.   The DOJ Does Not Have Ready Access to the SEC's Files................... 16

    IV.   The DOJ's Guidance for Prosecutors Regarding Criminal Discovery Does Not Create Obligations Different From Third Circuit Law, and in Any Event Does Not Weigh in Favor of Searching the SEC's Files Here...... 21

    V.    Defendants Are Not Entitled to an Evidentiary Hearing on Their Claims ..................................................................................... 22

**CONCLUSION** ............................................................................ 24

## TABLE OF AUTHORITIES

**Federal Cases**

FDIC v. MAXXAM, Inc., 523 F.3d 566 (5th Cir. 2008) ............................... 9

SEC v. Dresser Industries, Inc., 628 F.2d 1368 (D.C. Cir. 1980) ............... 9

SEC v. Stanard, 06 Civ. 7736 (GEL), 2007 U.S. Dist. LEXIS 46432 (S.D.N.Y. 2007) ........................................................................................ 14, 18

United States v. Avellino, 136 F.3d 249 (2d Cir. 1998) ............................. 9

United States v. Caceres, 440 U.S. 741 (1979) ........................................ 22

United States v. Christie, 624 F.3d 558 (3d Cir. 2010) ............................ 21

United States v. Ferguson, 478 F. Supp. 2d 220 (D. Conn. 2007) ........... 14

United States v. Finnerty, 411 F.Supp.2d 428, 433 (S.D.N.Y. 2006).. 17, 18

United States v. Georgiou, No. 10-4774, 2015 U.S. App. LEXIS 832 (3d Cir. Jan. 20, 2015) ..................................................................................... 20

United States v. Gupta, 848 F.Supp.2d 491 (S.D.N.Y. 2012) ................... 19

United States v. Martoma, 990 F. Supp. 2d 458 (S.D.N.Y. 2014) ............. 19

United States v. Morris, 80 F.3d 1151 (7th Cir. 1996) ....................... 13, 18

United States v. Norris, 753 F.Supp.2d 492 (E.D. Pa. 2010) ................... 17

United States v. Pelullo, 399 F.3d 197 (3d Cir. 2005) ....................... 11, 13

United States v. Perdomo, 929 F.2d 967 (3d Cir. 1991) .................... 18-19

United States v. Piper, Criminal No. 09-218, 2012 U.S. Dist. LEXIS 86237 (M.D. Pa. June 20, 2012) ..................................................................... 12

United States v. Reyeros, 537 F.3d 270 (3d Cir. 2008) ............................ 23

United States v. Rigas, 583 F.3d 108, 126 (2d Cir. 2009) ........................ 19

United States v. Rigas, 779 F.Supp.2d 408 (M.D. Pa. Apr. 20, 2011) ...... 20

United States v. Risha, 445 F.3d 298 (3d Cir. 2006) ................................. 9

United States v. Slawson, Criminal Case No. 1:14-CR-00186-RWS-JFK, 2014 U.S. Dist. LEXIS 159931, (N.D. Ga. Nov. 7, 2014) ................ 11, 19

United States v. Stringer, 535 F.3d 929 (9th Cir. 2008) ........................... 9

## **Statutes**

15 U.S.C. §§ 77t(b), 78u(d) ....................................................................... 9

15 U.S.C. § 78t ........................................................................................... 3

15 U.S.C. § 80b-3(e)(6) .............................................................................. 3

## **Other**

U.S. Attorney's Criminal Resources Manual § 9-165 ............................... 20

## **PRELIMINARY STATEMENT**

Defendants' motion to compel the U.S. Department of Justice ("DOJ") to search all of the files of the U.S. Securities and Exchange Commission ("SEC") for Brady materials is unwarranted and unsupported by the law.   The DOJ has produced an extraordinary amount of discovery in this case, well beyond the requirements established by law.   And it has produced, or is producing, virtually all fact materials—meaning documents collected from third parties and memoranda of interviews conducted—gathered by the DOJ and the SEC in their investigations into securities trading practices at ConvergEx Group, LLC and its affiliates (collectively, "ConvergEx").   Nonetheless, Defendants have filed this motion suggesting the DOJ has some obligation beyond this.   It does not.

In their motion, Defendants seek a blanket declaration from the Court that the DOJ is responsible for reviewing the entirety of the SEC's files in this matter—which would, of course, include unspecified, non-fact materials almost certainly protected by work-product and other privileges—for any Brady material that might be present.   The extreme relief the Defendants request is unwarranted given the comprehensive discovery the DOJ is producing, and inappropriate under clear Third Circuit precedent given the DOJ's lack of control over the SEC and its investigation.   As explained below, the SEC is an independent agency—over which the DOJ has no legal right to assert control—that conducted an investigation separate from the DOJ's investigation into the same facts: the practice of taking "trading profits" (a/k/a "TP") at

ConvergEx.   While the SEC participated in fact-gathering with the DOJ during the course of the two agencies' separate investigations, its investigation is independent.   This is highlighted most vividly by the stark differences between the SEC's and DOJ's conclusions concerning which individuals and entities to hold accountable for the wrongdoing and the scope of the wrongdoing.

In addition, the DOJ has produced or is producing all of the memoranda of interviews ("MOI's") prepared by the SEC related to its investigation of TP practices at ConvergEx (save for one, as explained below), has produced virtually all of the documents that the SEC collected as part of that investigation, is in the process of producing the remaining documents that the SEC collected, and will obtain and review for Brady material any notes taken by SEC attorneys during interviews in which the SEC participated.   In short, Defendants have or will have all of the same fact material gathered by the SEC.   Even the cases cited by Defendants where the courts found a joint investigation would not support the far-reaching discovery request they make here.   The Defendants' request that the DOJ scour the SEC's non-fact materials—emails, deliberative process memoranda, etc.—for potential Brady materials is something the law does not support, would require the Court to ignore the fact that the DOJ and the SEC are wholly separate agencies with no power to compel each other to do anything, and would impose a paralyzing burden on both the DOJ and the SEC.

-2-

**BACKGROUND**

I.   The DOJ's Investigation Into the Taking of TP at ConvergEx Has Been and Remains Separate From the SEC's Investigation Into the Same Conduct

In 2011, the SEC opened an investigation related to the taking of TP at ConvergEx.   Because of the possibility of criminal wrongdoing, the SEC informed the DOJ of the SEC's investigation.   The DOJ opened its own investigation, and since 2011, the SEC and the DOJ have been pursuing independent investigations into the taking of TP at ConvergEx.

The SEC consists of five presidentially appointed Commissioners, one of whom is designated the Chairman by the President.   It is an independent agency with approximately 4,200 employees that exercises significant autonomy in carrying out its mission of protecting investors; maintaining fair, orderly, and efficient markets; and facilitating capital formation.[1]   The SEC furthers its mission in part by bringing civil enforcement actions against individuals and companies for violating the securities laws.   Such actions include civil enforcement tools unavailable to the DOJ, such as claims for failure to supervise individuals who violate the securities laws, or claims for "control-person" liability (i.e., controlling someone who violates the securities laws).   See 15 U.S.C. § 78t (control-person liability under Section 20 of the Securities Exchange Act); 15 U.S.C. § 80b-3(e)(6) (failure-to-supervise provision of Section 203 of the

---

[1] See http://www.sec.gov/about/whatwedo.shtml, Agency and Mission Information (last visited February 19, 2015); http://www.sec.gov/about /reports/sec-fy2016-agency-mission-information.pdf, at 11 (last visited February 19, 2015).

Investment Advisers Act).

In their investigations into the taking of TP at ConvergEx, the DOJ and SEC have made independent decisions concerning which individuals to interview.   To conserve the time and resources of the agencies, the witnesses, and private companies, the SEC has participated in many—though not all—of the interviews led by the DOJ in this matter, and the DOJ has likewise participated in many—though not all—of the interviews led by the SEC. Interviews led by the DOJ have generally been memorialized in a memorandum by an FBI Agent or Postal Inspector, while interviews led by the SEC have generally been memorialized by an SEC attorney.   Of course, in these interviews, attorneys who are present from the agency not leading the interview have been free to ask, and have asked, their own questions related to their own agency's investigative priorities.   Interviewees who requested proffer agreements entered into separate agreements with the SEC and the DOJ, and each agency's proffer agreement did not bind the other.

The SEC and DOJ both participated in some meetings with counsel for ConvergEx or individuals that related to factual matters, while in other instances attorneys for third parties met separately with each agency.   Moreover, although the DOJ and SEC both participated in some interviews and meetings, no personnel from either agency ever functioned as a member of the other agency's investigative team.   No SEC attorney participated in DOJ charging decisions, nor did any prosecutor participate in the SEC's charging deliberations.

-4-

The SEC has independently decided what documents it wished to obtain from third parties through subpoenas and document requests.   Because of the common core of facts, the DOJ often obtained the same documents.   And, for efficiency reasons, the DOJ often asked ConvergEx and other companies simply to produce copies to the DOJ of the same documents produced to the SEC, or has obtained copies of produced documents from the SEC, in order to avoid imposing unnecessary burdens on companies to conduct distinct document productions.   The DOJ has not, however, relied exclusively on requests made by the SEC.   Instead, the DOJ has made requests for documents and information that go beyond the SEC's requests.   And the SEC has maintained its own investigative files separate and independent from those maintained by the DOJ, FBI, and U.S. Postal Inspection Service.

Throughout these investigations, each agency has had complete autonomy to make its own decisions, and each has diverged from the other in the conclusions it has drawn from the facts.   The SEC's resolution with ConvergEx included a failure-to-supervise claim under Section 203 of the Investment Advisers Act as well as a fraud claim, whereas the DOJ's resolution included only fraud counts.[2]   The SEC's theory of liability was also fundamentally broader

---

[2] The SEC resolved its civil claims against ConvergEx by entering into a settlement with two U.S.-based ConvergEx brokerage firms and with ConvergEx Global Markets Limited ("CGM"), the Bermuda-based entity that actually took TP on client trades.   The DOJ entered into a resolution with CGM and the ConvergEx holding company, but not the U.S. brokers.   The SEC's emphasis on U.S. brokers reflects that agency's role as the primary regulator of U.S. brokerage firms.

than the DOJ's.   As evidenced in its Proposed Plan of Distribution, it held the company accountable for <u>all</u> trades with a U.S. nexus on which TP was taken during the relevant time period.[3]   By contrast, the DOJ resolved with the company based on direct, affirmative misrepresentations to clients.   As a consequence, the disgorgement amount provided for in ConvergEx's agreement with the SEC—$79,802,448—was substantially larger than the $12,789,972.95 restitution amount in the DOJ resolution.   These differences are due to the distinct missions of the agencies, the differences in each agency's charging authority, and the differing judgments the agencies made when exercising that authority.

In addition, the SEC has thus far chosen not to sue Defendant Michael Craig Marshall, has sued Defendant Anthony Blumberg, and has settled a case alleging control-person liability under Section 20(a) of the Exchange Act against Craig Lax, a former senior ConvergEx executive.   In the criminal case, obviously, Defendants Blumberg and Marshall have been indicted, but Mr. Lax has not been.

---

[3] The SEC had ConvergEx place the disgorgement amount, along with prejudgment interest and a civil monetary penalty, into a "Fair Fund."   The SEC's Proposed Plan of Distribution—which is subject to change based on public comments—provides for how money in the Fair Fund will be distributed and envisions that all clients who had TP taken on their trades during the relevant time period will receive at least some compensation.   <u>See</u> Proposed Plan of Distribution, http://www.sec.gov/litigation/admin/2014/34-72146-ppd.pdf, at 2 (last visited on February 19, 2015).

## II. The DOJ's Production of Discovery in This Matter Has Been Voluminous, and Has or Will Include Virtually All Fact Materials Gathered by the SEC in That Agency's ConvergEx TP Investigation

The DOJ has produced voluminous discovery—well in excess of the obligations imposed by the Constitution, statutes, the rules of criminal procedure, and case law—and has provided the Defendants with myriad tools to navigate and understand that discovery. The DOJ has produced more than two million documents to each Defendant, and has included in its productions an array of information to assist the defendants in analyzing the discovery and preparing for trial. This has included:

(i) Metadata allowing the defendants to search and sort based on fields such as Bates number, sender, recipient, custodian, subject, and date, as well as to perform keyword searches regarding any issue, person, or phrase they choose.

(ii) Binders of key documents relevant to the charged conduct, which enable the defendants to review quickly many of the documents most germane to the case.

(iii) Eighty (80) MOI's memorializing interviews conducted by the DOJ or the SEC of sixty-four (64) different witnesses. The MOI's not only give Defendants insight into the statements of key witnesses concerning the relevant events, but also—because they identify by Bates stamp the documents shown to each witness—effectively constitute a road map to many of the most important documents in the case. The DOJ has produced virtually all of the MOI's in its possession of interviews it conducted with fact witnesses relating to the charged conduct, with the exception of two individuals: Jonathan Daspin and Thomas Lekargeren. For those two individuals, the DOJ has provided the defendants with a letter summarizing statements made by them that relate to categories of materials that defendants have characterized as Brady. In addition, the DOJ has produced memoranda reflecting summaries of interviews of the Defendants that were conducted by counsel for ConvergEx that counsel for ConvergEx orally provided to the Government.

-7-

(iv)　　A spreadsheet listing the speakers—as identified by counsel for ConvergEx—in almost five-hundred (500) audio recordings.

(v)　　Cover letters in the DOJ's possession that accompanied productions made by third parties.   Most notably, this includes the cover letters from ConvergEx Group and its affiliates (which productions account for the vast majority of the discovery in this case).   The DOJ is also producing, per the Court's order, requests for information made by the SEC and DOJ to third parties, and those parties' responses to the SEC and DOJ.

The bulk of this material—more than 1.7 million documents—was delivered to the defendants on November 10, 2014, three business days after the Court entered the protective order in this matter.   The DOJ has since supplemented this production, including a production of approximately 350,000 documents on November 19, 2014.

The DOJ has also complied with the Court's order to identify to Defendants Brady information "to the greatest extent reasonably practicable" by highlighting specific documents relating to defense theories that counsel have articulated. Specifically, the DOJ has identified for Defendants documents relating to their defenses based on advice of counsel and based on the "Chinese Wall Policy" promulgated by ConvergEx's General Counsel.   The DOJ continues to review its files to comply with its ongoing discovery obligations.

On September 10, 2014, Defendant Marshall sent the DOJ a letter—joined by Defendant Blumberg in a letter sent the following day—that requested far more than the fact materials collected by the SEC.   Specifically, Defendant Marshall requested:

A complete copy of the SEC's file in connection with its investigation of ConvergEx Global Markets Limited and

-8-

> related individuals, including Anthony Blumberg,
> Jonathan Daspin, and Thomas Lekargeren, as well as a
> copy of any documents memorializing conclusions
> reached by the SEC relating to that examination and
> resulting in the complaints and orders filed in [the SEC
> cases against ConvergEx, Blumberg, Daspin, and
> Lekargeren].

9/10/2014 letter from Defendant Marshall to the DOJ (emphasis added).   By

letter dated December 24, 2014, the DOJ informed the Defendants that "the

Government and the SEC possess many of the same underlying factual materials

related to this matter."   The DOJ also stated, however, that it did not "have

possession of the SEC's file, and the SEC [wa]s not part of the 'prosecution

team,'" so that the DOJ had no obligation to search the SEC's files.   After raising

the issue at a January court hearing, the Defendants filed the instant motion on

January 28, 2015 to compel the Government to search all of the SEC's files for

<u>Brady</u> material.

## **ARGUMENT**

"There is nothing improper about the government undertaking

simultaneous criminal and civil investigations. . . ."   <u>United States v. Stringer</u>,

535 F.3d 929, 933 (9th Cir. 2008) (reversing district court's dismissal of

indictments and approving concurrent DOJ and SEC investigations into

securities fraud).   Indeed, "[t]he simultaneous prosecution of civil and criminal

actions is generally unobjectionable because the federal government is entitled to

vindicate the different interests promoted by different regulatory provisions even

though it attempts to vindicate several interests simultaneously in different

-9-

forums." FDIC v. MAXXAM, Inc., 523 F.3d 566, 592 (5th Cir. 2008).   In fact, "[e]ffective enforcement of the securities laws requires that the SEC and [DOJ] be able to investigate possible violations simultaneously."   SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1377 (D.C. Cir. 1980) (emphasis added).   This is why the SEC's sharing of information with the DOJ is in fact specifically authorized by statute.   See Stringer, 535 F.3d at 933; Dresser, 628 F.2d at 1376; 15 U.S.C. §§ 77t(b), 78u(d).

Under certain circumstances, a prosecutor's duty to disclose Brady information "reaches beyond evidence in the prosecutor's actual possession." United States v. Risha, 445 F.3d 298, 303 (3d Cir. 2006).   Courts have held, however, that "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor."   United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998). This is because "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." Id.

In the Third Circuit, in determining whether a prosecutor will be deemed to have "constructive knowledge" of information outside the prosecutor's own agency, courts consider the following three factors:

1)   whether the party with knowledge of the information is acting on the government's "behalf" or is under its

"control";

(2)     the extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and

(3)     whether the entity charged with constructive possession has "ready access" to the evidence.

Id. at 304.   All three of these factors weigh against imputing knowledge of information present in the SEC's files to the DOJ in this case.

I.     The SEC Is Not Acting on the DOJ's Behalf or Under Its Control

In the ConvergEx investigation, the SEC has neither been acting on the DOJ's "behalf" nor under its "control."   The SEC is an independent agency that is under neither the legal nor the functional control of the DOJ.   There is simply no mechanism by which the DOJ could have the SEC undertake an investigative step or litigation action that the SEC's own staff did not wish to carry out for its own investigative purposes.   The SEC is thus "not a member of the prosecution team" because there is no "indication that the prosecution had any sort of control over [its] officials."   United States v. Pelullo, 399 F.3d 197, 218 (3d Cir. 2005) (concluding that Pension Welfare Benefits Administration was not a member of the prosecution team).

This case is also similar to United States v. Slawson, Criminal Case No. 1:14-CR-00186-RWS-JFK, 2014 U.S. Dist. LEXIS 159931, (N.D. Ga. Nov. 7, 2014).   There, the court held that the SEC was not part of the prosecution team, and DOJ attorneys were not responsible for Brady in the SEC's files, because there had been no showing that SEC personnel were "acting at the behest of the

-11-

federal prosecutors or the FBI or, for that matter, were even involved in the criminal investigation of Defendant." Id. at *47.

Here, just as in Pelullo and Slawson, the SEC has made its own decisions about whom to interview, what questions to ask, and what documents to seek. Furthermore, the SEC elected to resolve with ConvergEx on a broader theory of liability, did not sue an individual against whom the DOJ has obtained an indictment, and settled with another individual whom the DOJ has not charged. All of these facts demonstrate that the SEC acted independently from the DOJ in this investigation.

II.   The SEC Did Not Conduct a Joint Investigation With the DOJ, But Rather Carried Out a Separate Investigation, Using Its Own Resources, Into the Same Facts

In addition, the SEC conducted its investigation through a separate team using its own resources.   The DOJ and SEC work in separate offices, have maintained separate investigative files, and did not share personnel during their investigations.   At no time was an SEC attorney made a Special Assistant United States Attorney or otherwise functionally made part of the DOJ investigative team.   The DOJ took separate, independent actions such as having FBI Agents and Postal Inspectors conduct voluntary interviews with witnesses at their homes or in public places, without the involvement of the SEC.   As noted above, SEC attorneys were present in many of the interviews led by the DOJ, and vice versa, but this was done for efficiency and the convenience of the interviewees.   Far from a "joint investigation," the two agencies carried out

-12-

separate investigations with separate goals that have led to different outcomes. The SEC sought to bring civil, instead of criminal, enforcement actions; ultimately settled on a significantly broader theory of liability and disgorgement for ConvergEx than the DOJ; and has already diverged from the DOJ in its decisions concerning which individuals to hold accountable.

In United States v. Piper, Criminal No. 09-218, 2012 U.S. Dist. LEXIS 86237 (M.D. Pa. June 20, 2012), state prosecutors had granted the defendant a benefit in the form of a pretrial disposition known as Accelerated Rehabililtative Disposition, or "ARD." Id. at *12-13. The court found that, because "the decision to submit . . . [a] case for ARD rests in the sound discretion of the district attorney," the state prosecutor "did not act as a team with the federal authorities when he agreed to allow Barger to be placed in the ARD Program." Id. at *25. Here, the SEC has similarly made all strategic and tactical investigative decisions in its own sound discretion, and consequently should not be deemed part of the prosecution team. See also Pelullo, 399 F.3d at 218 (holding that the Pension and Welfare Benefits Administration was not a member of the prosecution team where there was "no indication that the prosecution and PWBA engaged in a joint investigation or otherwise shared labor and resources").

This case is also similar to United States v. Morris, 80 F.3d 1151 (7th Cir. 1996), in which the DOJ had obtained convictions of two executives of a failed savings and loan association. Id. at 1154. The Seventh Circuit affirmed the lower court's holding that Brady did not require the DOJ to search the files of

-13-

other government agencies, including the SEC, that "at various times conducted independent investigations of [the savings and loan association]." Id. at 1169-70.   The court concluded that the DOJ should not be held accountable for material in the files of agencies with "no involvement in the investigation or prosecution at issue." Id. at 1169.

Here, as in Piper, Pelullo, and Morris, the SEC's key investigative decisions have all remained within their sound discretion, and consequently, this factor weighs against a finding of constructive knowledge of documents outside of the DOJ's possession.

Defendants point to certain characteristics of the investigations that they claim demonstrate that the first two Risha factors weigh in favor of finding a joint investigation.   Those claims find support neither in fact nor law.   They cite the fact that the agencies each participated in some of the same interviews and certain meetings with counsel for the company and individuals.   However, participation in joint interviews alone is simply not enough to impose on DOJ constructive knowledge of the contents of the SEC's files.   In United States v. Ferguson, 478 F. Supp. 2d 220 (D. Conn. 2007), the DOJ had conducted eleven interviews jointly with the New York Attorney General's office.   Id. at 239.   The court noted, however, that the Attorney General's office "did not coordinate investigative decisions or charging decisions" with the DOJ.   Id. at 239.   The court concluded that the collaboration for interviews "was not so extensive as to be 'joint' to impute knowledge of the NYAG's investigation to the government."

-14-

Id. at 240.   Similarly, the fact that interviews were conducted jointly here is not enough to outweigh the independence the SEC had with respect to its key investigative and charging decisions.

In SEC v. Stanard, 06 Civ. 7736 (GEL), 2007 U.S. Dist. LEXIS 46432 (S.D.N.Y. 2007), the court also rejected the argument that joint participation in an interview triggers a finding of a joint investigation and entitles a defendant to information contained in the other agency's files.   In Stanard, the defendant in a civil case brought by the SEC sought notes and other memoranda in the possession of the DOJ documenting interviews that the SEC and DOJ jointly conducted.   Id. at *8.   The court noted that "the investigations, while they may have overlapped, were not conducted jointly, and . . . the SEC has neither possession, custody, nor control of the FBI's notes."   Id. at *10.   The Defendants in this case are, of course, seeking SEC files as part of their criminal discovery, whereas the Stanard defendant was seeking DOJ files as part of a civil case, but the principal is the same.   The agencies both participated in certain meetings to conserve time and resources.   However, the agencies' efforts to conduct their investigations efficiently has no bearing on the critical questions of whether the DOJ effectively controlled the SEC, and whether the SEC was functioning as an independent team pursuing its own goals.

Defendants also point to the fact that, when it sought to stay discovery in the SEC proceeding, the DOJ highlighted the significant overlap between the alleged facts in the SEC's complaint and in the indictment.   This fact is a red

-15-

herring.   While there is no doubt that there is substantial factual overlap between the two cases, this does not establish that the SEC was under DOJ's control, was acting on behalf of DOJ, or conducted a joint investigation with DOJ.   Indeed, the agencies' differing conclusions from the identical set of facts—different sets of victims, different theories of loss and liability, and holding different individuals accountable—underscore the agencies' independence.   In any event, however, the Defendants have or will have all of the fact materials from the SEC's files (save for one MOI of an SEC interview with Jonathan Daspin, portions of which were summarized in a letter by DOJ) covering the relevant facts.

III.   The DOJ Does Not Have Ready Access to the SEC's Files

Finally, the DOJ does not have "ready access" to the entire file of the SEC's investigation of the taking of TP at ConvergEx.   The DOJ has been able to obtain from the SEC factual materials relating to issues in common for both agencies' investigations: documents that the SEC obtained from third parties in response to document requests and MOI's that the SEC prepared to summarize interviews of witnesses it conducted.   The DOJ's understanding is that it has received or will receive shortly all of the SEC's MOI's related to its investigation of the taking of TP at ConvergEx.   Furthermore, with the exception of an MOI of an SEC interview with Jonathan Daspin, the DOJ has produced or will be producing all of these SEC MOI's to Defendants.[4]   The DOJ also continues to gather a

---

[4] The DOJ has treated the MOI of the SEC's Daspin interview the same way it treated its own MOI's of Daspin interviews.   It has reviewed them and

relatively small number of documents the SEC collected from third parties during its investigation, and the DOJ will produce them to Defendants upon receipt.[5]   Finally, the SEC has informed the DOJ that its attorneys took notes during certain interviews in which the SEC participated.   The SEC has agreed to make those notes available to the DOJ, which will review them and produce material contained within them relevant to the topics the defendants have identified as potentially exculpatory.

At the same time, the SEC's files include a host of documents that the SEC does not share with other agencies.   These include, or are very likely to include, privileged documents or documents subject to work-product protection, such as legal memoranda analyzing the relevant law and the strength of the SEC's case and email communications among SEC attorneys discussing litigation strategy or otherwise preparing for litigation.   These would also include memoranda and other documents created by SEC staff in seeking approval from its Commissioners for the resolutions and the complaints that it has publicly filed to date.   In addition, the SEC almost certainly possesses communications with counsel for ConvergEx negotiating the resolution of the SEC's case against the ConvergEx entities, and similar communications reflecting negotiations with

incorporated any material concerning topics the Defendants have identified as potentially exculpatory in a letter to Defendants.   Should Daspin testify, the DOJ will, of course, comply with its <u>Jencks</u> and <u>Giglio</u> obligations.

[5] In addition, in view of the Court's order that the DOJ produce to Defendants copies of requests for information, including subpoenas, the DOJ has obtained from the SEC copies of its subpoenas related to the investigation of the taking of TP at ConvergEx, and is producing those to the Defendants, as well.

counsel for individuals.

It is the DOJ's understanding that the SEC generally does not share, and in this case has not shared, documents of this type with the DOJ.   The DOJ has no ability to compel the SEC to turn them over, and were the DOJ to request them, the decision about what to do with them would be entirely the SEC's. Moreover, the burden involved in undertaking such a review—which would apparently have to cover thousands of documents and email messages in the possession of everyone from staff attorneys up to the SEC's own Commissioners—is staggering.

The SEC's files are thus no more readily accessible to the DOJ than the materials at issue in United States v. Norris, 753 F.Supp.2d 492 (E.D. Pa. 2010). In that criminal case, the court considered materials that were in the possession of private companies cooperating with the DOJ Antitrust Division that the DOJ had not produced.   Id. at 529.   The court concluded that "the fact that the Antitrust Division could have possibly obtained the materials does not give rise to any discovery obligations."   Id. at 530-31.   Despite the companies' significant motivation to accede to a request made by the DOJ, the court found that "the Antitrust Division had no constructive possession of the materials." Id. at 531; see also United States v. Finnerty, 411 F.Supp.2d 428, 433 (S.D.N.Y. 2006) ("The mere fact that the Government may have requested and received documents from the NYSE in the course of its investigation does not convert the investigation into a joint one.").   Similarly, the DOJ here does not have "ready

-18-

access" to documents in the SEC's files.   This is particularly true for the SEC's privileged communications, attorney work product, and documents reflecting negotiations with counsel for individuals or companies.

The Government's position is fully supported by the case law.   While there is no Third Circuit case directly addressing the question of whether the DOJ should be imputed to have knowledge of <u>Brady</u> in the files of the SEC, courts outside the Third Circuit have declined to impute such knowledge where a DOJ investigation overlaps with an investigation of the SEC or other regulatory entity. <u>See</u> <u>United States v. Rigas</u>, 583 F.3d 108, 126 (2d Cir. 2009) (affirming district court finding that "the United States Attorney's Office was not in possession of notes from SEC interviews with . . . witnesses, and did not have an obligation to disclose what they did not possess"); <u>Morris</u>, 80 F.3d at 1169-70; <u>Slawson</u>, 2014 U.S. Dist. LEXIS 159931, at *47; <u>Stanard</u>, 2007 U.S. Dist. LEXIS 46432, at *10 (finding that SEC and DOJ "investigations, while they may have overlapped, were not conducted jointly"); <u>Finnerty</u>, 411 F.Supp.2d at 433 (finding that the DOJ was not accountable for documents in the possession of the NYSE because DOJ and NYSE investigations were not joint).

And the cases cited by Defendants are inapposite, and in some cases inconsistent with Third Circuit law as articulated in <u>Risha</u>.   <u>United States v. Perdomo</u>, 929 F.2d 967 (3d Cir. 1991), dealt with information in the possession of police officers who were part of the same "Narcotics Strike Force" that had arrested the defendant—a much stronger connection than the link between

wholly separate agencies that Defendants seek to establish here.   See 929 F.2d at 970.

Furthermore, United States v. Gupta, 848 F.Supp.2d 491 (S.D.N.Y. 2012), is at odds with Third Circuit law.   Gupta focused primarily on the fact that the SEC and the DOJ both participated in 44 interviews.   Id. at 493.   The Third Circuit standard as articulated in Risha, however, requires analysis of more than whether two agencies both participated in the same interviews.   Instead, a court must examine whether the DOJ controls the agency or personnel possessing the information defendants seeks, whether resources are being shared between the two agencies, and the accessibility of the information to the DOJ.   445 F.3d at 304.   In Gupta, the district court deviated from the very analysis that is binding law in the Third Circuit, stating that "[f]or Brady purposes, it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions."[6]   848 F.Supp.2d at 494 (emphasis added); see also United States v. Martoma, 990 F. Supp. 2d 458, 460-61 (S.D.N.Y. 2014) (re-applying Gupta's "joint fact-gathering" test and noting that "the SEC and the USAO jointly conducted twenty interviews of twelve witnesses").   However, no district court case—and certainly not one from a different jurisdiction—can disturb the clear holding of Risha.[7]

---

[6] Gupta appears to have acknowledged its departure from at least some previous case law, commenting that "the language in the case law is not always consistent with [the] distinction" between what Gupta called "joint fact-gathering" and a "joint prosecution."   Id. at 494.

[7] United States v. Rigas, 779 F.Supp.2d 408 (M.D. Pa. Apr. 20, 2011), noted

Regardless, <u>Gupta</u> ultimately only held that the defendant was entitled to <u>Brady</u> contained within MOI's prepared by the SEC and notes taken by an SEC attorney at one interview.   Here, the DOJ has already turned over, or will turn over all of the MOI's prepared by the SEC relating to its investigation of TP practices at ConvergEx for potentially exculpatory material (save for the Daspin MOI prepared by the SEC, which the DOJ summarized portions of in a letter to Defendants), and will review notes taken by SEC attorneys at interviews.

IV.   <u>The DOJ's Guidance for Prosecutors Regarding Criminal Discovery Does Not Create Obligations Different From Third Circuit Law, and in Any Event Does Not Weigh in Favor of Searching the SEC's Files Here</u>

Defendants also claim that by not searching the SEC's files, the DOJ is violating its own Guidance for Prosecutors Regarding Criminal Discovery.   As an initial matter, that guidance states explicitly that it "provides prospective guidance only and is not intended to have the force of law or to create or confer any rights, privileges, or benefits."   <u>See</u> U.S. Attorney's Criminal Resources Manual § 9-165.[8]   It is well-settled that DOJ guidelines "do not themselves

---

specifically that the defendants were "seeking limited information from the SEC and . . . not asking that entity to open its entire file to them."   Here Defendants seek a blanket declaration that knowledge of <u>Brady</u> anywhere in the SEC's files is imputed to the DOJ.   <u>United States v. Georgiou</u>, No. 10-4774, 2015 U.S. App. LEXIS 832, at *32 (3d Cir. Jan. 20, 2015), in fact weighs <u>against</u> Defendants.   In <u>Georgiou</u> the DOJ had made a production of "pretrial discovery from the SEC, including trading and financial records."   <u>Id.</u> at *32.   This production apparently caused the defendant to withdraw his motion as moot.   <u>Id.</u>   Only after the defendant raised a <u>post-trial</u> challenge seeking a narrowly tailored set of notes from two SEC interviews did the DOJ review the notes and determine that they contained no <u>Brady</u>.   The district court and the Third Circuit concurred. <u>See id.</u> at *32.

[8] Available at

create rights for criminal defendants." United States v. Christie, 624 F.3d 558, 573 (3d Cir. 2010); see also United States v. Caceres, 440 U.S. 741, 754 (1979) ("[I]t seems clear that agencies are not required, at the risk of invalidation of their action, to follow all of their rules, even those properly classified as internal."). Ultimately, of course, it is the Third Circuit precedent interpreting Brady and the other discovery rules that controls whether the DOJ has met its discovery obligations.   As described above, the relevant case law makes clear that the DOJ has.

In any event, several of the factors laid out in the Guidance weigh against requiring the DOJ to review the SEC's files.   The two agencies did not "share[] resources related to investigating the case."   The SEC did not "act[] as part of the prosecution team" by "conducting arrests or searches, . . . developing prosecutorial strategy, [or] participating in targeting discussions."   Although the SEC did conduct certain interviews, as noted above, these were on topics of interest to the SEC, and not interviews the SEC was conducting on the DOJ's behalf.   No SEC attorney was made a Special Assistant United States Attorney, and at no time have decisions "been made jointly regarding civil, criminal, or administrative charges."

V.     Defendants Are Not Entitled to an Evidentiary Hearing on Their Claims

Defendants are not entitled to an evidentiary hearing to explore their claim that the DOJ should search all of the SEC's files.   Given the extensive

---

http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm00165.htm (last visited on February 19, 2015).

productions the DOJ has made and its commitment to furnish fact materials from the SEC's files as described above, Defendants have not made "a threshold showing that a material fact [is] in dispute," as they are required to in order to obtain such a hearing.   United States v. Reyeros, 537 F.3d 270, 284 n.18 (3d Cir. 2008).   Accordingly, the court should deny Defendants' request for a hearing.

Ultimately, Defendants' argument is based on a fiction that the DOJ has resisted discovery at every turn.   In fact, the DOJ has engaged in extraordinary efforts to provide discovery both from its own files and those of the SEC and to assist the Defendants in navigating and understanding that discovery.   As noted above, the fact materials described above that are in the possession of the SEC have been provided or are being provided to Defendants.   Against this backdrop, Defendants fail to identify any reason, legal or otherwise, why the DOJ should be required to review the SEC's most sensitive internal communications, many of which are privileged or work product.

## **CONCLUSION**

For the reasons articulated above, the Government respectfully submits that the Court should deny Defendants' motion.

William J. Stellmach
Acting Chief
Fraud Section, Criminal Division
Department of Justice

By: _____/s/_____
Justin Goodyear
Jason Linder
Patrick Pericak
Trial Attorneys
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20005


Paul J. Fishman
United States Attorney
District of New Jersey

By: _____/s/_____
Leslie F. Schwartz
Assistant United States Attorney
United States Attorney's Office
970 Broad Street
Newark, NJ 07102